```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
EDWARD B. BEHARRY & CO., LTD.,            :
                                          :
                              Plaintiff,  :
                                          :         MEMORANDUM AND ORDER
              -against-                   :
                                          :         09-CV-0077 (DLI) (JMA)
BEDESSEE IMPORTS INC., BEDESSEE           :
IMPORTS LTD., VERMAN BEDESSEE,            :
INVOR BEDESSEE,                           :
                                          :
                              Defendants. :
---------------------------------------------------------- x
```

**DORA L. IRIZARRY, United States District Judge:**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants Bedessee Imports Inc., Bedessee Imports Ltd., Verman Bedessee, and Invor Bedessee collectively[1] move to dismiss plaintiff Edward B. Beharry Co.'s claims arising out of an allegedly defamatory publication related to a shipment of plaintiff's Special Madras Curry Powder ("INDI brand") into the United States. For reasons set forth below, the defendants' motion is granted in part and denied in part.

## BACKGROUND

For over thirty years, plaintiff, a Guyanese corporation, has used its trademarked INDI brand to market various spices in the United States, including its Special Madras Curry Powder. (Compl. ¶¶ 1, 9, 13, 18.) Defendants compete with plaintiff in the same market. (Compl. ¶¶ 27-28.) In October 2006, plaintiff sued defendants[2] in this district for counterfeiting, trademark infringement, and other related causes of action. (Compl. ¶¶ 19-20, 28, Ex. B at 1.) In March

---

[1] Invor Bedessee individually moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. As set forth below, that motion is denied.

[2] Invor Bedessee was not a party to the prior lawsuit. *See Edward v. Beharry & Co., LTD. v. Bedessee Imports Inc.*, 06-cv-5707 (E.D.N.Y.).

1

2007, the court entered a Final Judgment and Permanent Injunction on Consent ("Consent Judgment") that, among other things, prohibited defendants from "objecting, interfering, contesting or opposing the use and/or registration by [plaintiff] of the INDI Curry Mark." (Compl., Ex. A ¶ 8.e.)

Approximately eighteen months later, a publication, without a byline, appeared in the September 26 – October 2, 2008 issue of *The Caribbean New Yorker*, entitled, "FDA warns of filthy 'Special Madras Curry Powder.'" (Defs.' Mot., Ex. A.)   *The Caribbean New Yorker* is a newspaper read by the parties' customer base. (Pl.'s Opp'n at 2.)   The publication read:

> FDA warns of filthy "Special Madras Curry Powder"
>
> The West-Indian and Guyanese summer festivities may have passed [sic] but not the threat that the Edward B. Beharry Company's 'Special Madras Curry Powder' and other products pose to the public.
>
> On June 18, 2008, the FDA rejected a shipment of Edward B. Beharry's 'Special Madras Curry Powder', labeling it "filthy".  Federal Food & Drug Administration guidelines define "filthy" as an article that "appears to consist in whole or in part of a filthy, putrid or decomposed substance or to be otherwise unfit for food."
>
> Contradicting Beharry's claim of pride in providing its customers with high quality products and services, its "famous" Indi brand curry was denied entry to [sic] the United States.  The FDA, which monitors massive importations of food at busy U.S. border crossing points, rejected a shipment of Special Madras Curry Powder from Edward B. Beharry Co., Lacytown, Guyana.
>
> This curry powder is "filthy" declared FDA officials after inspecting Beharry's "Special Madras Curry Powder."   The advisory issued by the FDA states that the product appears to consist in whole or in part of a filthy, putrid, or decomposed substance or to be otherwise unfit for food. This is not the first time that the FDA has rejected entry to shipments of INDI curry powder from the Beharry Company. During the mid-1980's the FDA repeatedly rejected shipments of Beharry's curry powder on similar grounds.
>
> Earlier this year, on April 24, 2008, the FDA announced a warning for Edward B. Beharry Co.'s Custard Powder. The powder was found to contain non-permitted

and undeclared tartrazine, The FDA requires pre-approval of color batches. The FDA regularly seizes products found to contain undeclared tartrazine as well as products in which tartrazine is declared but not properly labeled or adequately tested.

The West-Indian community must be made aware of repeated adverse FDA actions regarding Beharry's food products and any corollary health risks.

The FDA announcements mentioned in this article may be viewed at the following urls:

http://www.fda.gov/ora/oasis/6/ora_oasis_c_gy.html
http:I/www.fda.gov/ora/fiars/ora_import_ia4502.html[3]

(typographical and grammatical errors in original) (Defs.' Mot. Ex. A.)  The INDI mark is prominently reproduced in the publication as well. (*Id.*)  Plaintiff alleges that defendants "contributed to, authored, conceived, submitted and/or otherwise caused" the piece to be published in *The Caribbean New Yorker*. (Compl. ¶ 30; Pl.'s Opp'n at 10.)  However, defendants assert that they "did not publish" the article and that "it is clear . . . that the Caribbean New Yorker and not Bedessee, published the article in dispute."   (Defs.' Mem. of Law at 7, 10.)

Plaintiff further alleges that, on September 29, 2008, defendant Invor Bedessee circulated[4] an email with a full text copy of the publication, above which he typed "[p]lease stop by our office, I would like to discus [sic] the following 'public article.'" (Compl., Ex. F.)  Invor, a citizen and resident of Canada, is the vice president of Bedessee Imports Ltd., a Canadian Corporation that transacts exclusively with Bedessee Imports, Inc. (Bedessee Decl.)  Invor claims that he "did not send the email . . . to any person or entity in New York or the United States" and also points out that he was not a party to the prior lawsuit between Beharry and

---

[3] Both links are broken and lead to a "Page Not Found" screen. The second link also contains a typographical error—the capital "I" should be a backslash.

[4] This email was allegedly circulated to plaintiff's distributors and customer base. (Compl. ¶¶ 33-34.)

3

Bedessee. (*Id*.)

After attempts to resolve this matter without additional litigation faltered, on January 9, 2009, plaintiff initiated this action alleging various federal and state law causes of action.   On March 19, 2009, defendants collectively moved to dismiss all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and defendant Invor Bedessee individually moved to dismiss the complaint as against him pursuant to Rule 12(b)(2).

## DISCUSSION

**1.  Invor Bedessee's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

Defendant Invor Bedessee moves to dismiss the claims against him asserting that the court cannot exercise personal jurisdiction over him because he is a resident-domiciliary of Canada and because "the [c]omplaint sets forth no facts demonstrating that [he] has had sufficient contacts with New York . . . ." (Bedessee Decl.; Defs.' Mem. of Law at 21.) Defendant argues that the "principal" conduct plaintiff alleges against him occurred exclusively in Canada—the mere sending of an e-mail. (Defs.' Mem. of Law at 21.)   Defendant is incorrect. The gravamen of plaintiff's complaint is that all named defendants, including Invor, "contributed to, authored, conceived, submitted and/or otherwise caused" defamatory remarks to be published in the September 26 – October 2, 2008 edition of *The Caribbean New Yorker*. (*See* Compl. 30; Pl.'s Opp'n at 20.)

The plaintiff has the burden to show that the court has jurisdiction over all defendants, but this burden is minimal at the pleadings stage and before discovery. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).   A plaintiff is only required to plead "good faith, legally sufficient allegations of jurisdiction" and may make a prima facie showing based solely on such allegations. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d

4

194, 197 (2d Cir. 1990).

Here, plaintiff alleges that defendant contributed to the publication of the allegedly defamatory remarks in *The Caribbean New Yorker*, which is distributed in New York. (Pl.'s Opp'n at 20; Compl. ¶ 30.)  Assuming that this allegation is true, which the court must, plaintiff's claim is legally sufficient to confer jurisdiction over defendant Invor Bedessee because it was reasonably foreseeable that his allegedly tortious conduct would negatively affect plaintiff in New York where plaintiff sells its products and where *The Caribbean New Yorker* is distributed. *See Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1976) (explaining that personal jurisdiction should be exercised with caution in the international context and that international persons "sought to be charged must know, or have good reason to know, that [their] conduct will have effects in the state seeking to assert jurisdiction over [them]"); *Starmedia Network, Inc. v. Star Media Inc.*, 2001 WL 417118, at *2 (S.D.N.Y. Apr. 23, 2001) (under New York law, injury "within the state" includes harm to business in New York market through lost sales or customers, as well as harm and threatened harm in New York market resulting from confusion and deception of New York computer users).  Accordingly, defendant Invor Bedessee's 12(b)(2) motion is denied.

### 2. Defendants' Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  On a motion to dismiss, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir. 1999).  In *Bell Atlantic Corp. v.*

*Twombly*, the Supreme Court created a new pleading standard that now requires plaintiffs to "state a claim to relief that is plausible on its face." 550 U.S. 544, 569 (2007). To be facially plausible, a complaint cannot make merely "a formulaic recitation of the elements of a cause of action," but must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The Second Circuit has interpreted *Twombly* to "requir[e] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*," rather than to mandate a "universal standard of heightened fact pleading." *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis added). In general, "[s]pecific facts are not necessary" to state a claim so long as the statement gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Twombly*, 550 U.S. at 555).

When material outside the complaint is "presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). For the purposes of this rule, the complaint is deemed to include writings and documents attached to it, referenced in it, or integral to it. *See* Fed. R. Civ. P. 10(c); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002). A document is "integral" to the complaint if "the complaint relies heavily upon its terms and effects." *Chambers,* 282 F.3d at 153 (internal quotation marks omitted). "A plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on

6

a dismissal motion; mere notice or possession is not enough." *Id.* Plaintiffs are harmed when material outside a complaint is considered on a motion to dismiss as they lack notice that such consideration is occurring. *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 155 (2d Cir. 2006). Rule 12(d)'s conversion requirement remedies this problem by "deter[ring] trial courts from engaging in fact finding when ruling on a motion to dismiss and ensur[ing] that when a trial judge considers evidence dehors the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it." *Id.* Accordingly, when there is actual notice by the opposing party of all the information in the movant's papers, the necessity to convert a motion to dismiss to one for summary judgment is largely dissipated. *Chambers,* 282 F.3d at 153. As discussed in more detail in section 2.A.3, *infra*, the exhibits (FDA website printouts) attached to defendants' motion to dismiss, while not attached to plaintiff's complaint, were referenced therein. Accordingly, the motion need not be converted to one for summary judgment.

### A. Common Law Commercial Defamation (Count VII)

Plaintiff alleges that defendants harmed its business by wrongfully publishing libelous remarks in *The Caribbean New Yorker* and disseminating those remarks in an e-mail sent to plaintiff's customers and distributors. (Compl. ¶¶ 30-40.) Specifically, plaintiff takes issue with the following passages:

(1) The West-Indian and Guyanese summer festivities may have passed [sic] but not the threat that the Edward B. Beharry Company's 'Special Madras Curry Powder' and other products pose to the public.

(2) Contradicting Beharry's claim of pride in providing its customers with high quality products and services, its "famous" INDI brand curry was denied entry to the United States.

7

(Compl. ¶ 37.)   Plaintiff contends that defendants maliciously promulgated these remarks, which undermined the public's confidence in its products and caused an approximate 75 percent loss in sales.   (Compl. ¶¶ 74-77.)

Defendants make four arguments in requesting dismissal of the plaintiff's defamation claim.   First, they argue that the claim is inadequately pled.   Second, they deny any connection to the publication.   Third, they argue that the content of the publication is substantially true.   Lastly, they argue that that publication in *The Caribbean New Yorker* is protected by section 74 of New York Civil Rights Law ("statutory fair report privilege").   For the reasons set forth below, the court denies defendants' motion to dismiss plaintiff's common law defamation claim.

*1. Pleading Requirements*

"Under New York law, a plaintiff seeking damages for libel must plead and prove four elements: (1) a defamatory statement of fact; (2) about the plaintiff; (3) publication to a third party; and (4) injury." *Van-Go Transport Co., Inc. v. N.Y. City Bd. of Educ.*, 971 F. Supp. 90, 97-98 (E.D.N.Y. 1997) (citing *Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61 (2d Cir. 1993)). Although plaintiff's defamation claim arises under state law, it is not subject to the particularity requirements of CPLR § 3016(a).   Rather, Rule 8 of the Federal Rules of Civil Procedure governs the pleading requirements for defamation claims made in federal court. *See Muzio v. Bayville*, 2006 WL 39063, at *8 (E.D.N.Y. Jan. 3, 2006) ("[A] claim for defamation asserted in federal court is governed by the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, not by the particularized pleading requirements of N.Y. C .P.L.R. § 3016."). "In determining whether a defamation claim complies with the pleading requirements of Rule 8, the court should consider whether the complaint references the alleged defamatory statement;

8

identifies the maker of that statement; and indicates when the statement was made, in what context it was made, whether it was made orally or in writing and whether it was made to a third party." *Id*. (citing *Unique Sports Generation, Inc. v. LGH-III, LLC*, 2005 WL 2414452, at *9 (S.D.N.Y. Sept. 30, 2005)).  "The central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Baez v. Jetblue Airways Corp.*, 2009 WL 2447990, at *9 (E.D.N.Y. Aug. 3, 3009) (quoting *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986) (citations omitted)).

The complaint properly references the publication and the allegedly libelous remarks within that publication.  (Compl. ¶ 37; Compl. Ex. E & F.)  The complaint also identifies defendants as the source of the publication and specifies the dates when the written statements were made. (Compl. ¶¶ 30, 33; Compl. Ex. F.)  If taken as true, the court finds that these are well-pleaded allegations against defendants under both *Twombly* and Rule 8 of the Federal Rules of Civil Procedure. *See Dilacio v. N.Y. City Dist. Council of the United Bhd. of Carpenters & Joiners of Am.*, 593 F. Supp. 2d 571, 577 (S.D.N.Y. 2008) (dismissing a defamation claim where plaintiff failed to allege that defendant caused or induced the publication of libelous remarks).

   2. *Defendants' Connection to the Publication*

Defendants' denial of any connection to the publication does not warrant 12(b)(6) dismissal.  The Supreme Court has explained that, when bringing a complaint, a plaintiff is required to "raise a right of relief above the speculative level on the assumption that all [factual] allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).  Thus, the Court acknowledged the distinction between plausibility and "impos[ing] a probability requirement at the pleading stage." *Id*. at 556.  Defendants' denial of

9

involvement in publishing the piece in *The Caribbean New Yorker* creates doubt about the truth of plaintiff's allegations. Doubt created by a factual dispute, however, does not make plaintiff's allegations implausible.

Plaintiff's complaint alleges that the defendants "contributed to, authored, conceived, submitted and/or otherwise caused" the article in question to be published. (Compl. ¶ 30.) To support these allegations, plaintiff notes that the publication did not contain a byline, and claims that this is probative evidence that the piece is a paid advertisement, rather than a news article. (Pl.'s Opp'n at 12, n.2 and accompanying text.) Additionally, the email Ivor Bedessee is alleged to have sent to the parties' mutual customers raises additional suspicion, as he included the publication at issue in the email and expressly characterized it in quotation marks as a "'public article.'" Plaintiff's allegations concerning defendants' connection with the article's publication are further supported by the litigious history between the parties. In short, while there may be issues of fact to be resolved concerning defendants' connection to the publication, plaintiff's claim arises above the "speculative level" necessary to survive dismissal on a 12(b)(6) motion.

### 3. Substantial Truth

As an initial matter, before defendants can assert the affirmative defense of substantial truth in a 12(b)(6) motion, they must first establish that the defense appears on the face of plaintiff's complaint. *Silver v. Kuehbeck*, 217 F. App'x 18, 22 (2d Cir. 2007) ("[C]ourts may grant a pre-answer motion to dismiss on the basis of an affirmative defense where such defense appears on the face of the complaint.") (citations omitted). Although defendants have submitted exhibits (printouts of FDA websites) in support of their motion to dismiss that were

not attached to the complaint, those exhibits are copies of the websites directly referenced in Exhibits E & F to the complaint, and represent facts referenced throughout the complaint. Accordingly, this court need not convert this motion into one for summary judgment in order to address defendants' defense of substantial truth.

Under New York law, it is well-settled that "'truth is an absolute, unqualified defense to a civil defamation action.'" *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986) (quoting *Commonwealth Motor Parts Ltd. v. Bank of Nova Scotia*, 44 A.D.2d 375, 377 (1st Dep't 1974) (citation omitted)). It is an equally fundamental concept that substantial truth suffices to defeat a charge of libel. *Id.* (quoting *Fairley v. Peekskill Star Corp.*, 83 A.D.2d 294, 297 (2d Dep't 1981)). A statement is substantially true if the statement would not "have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Fleckenstein v. Friedman*, 266 N.Y. 19, 23 (1934); *see also Cafferty v. Southern Tier Publishing Co.*, 226 N.Y. 87, 93 (1919) ("When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done."). In other words, "it is not necessary to demonstrate complete accuracy to defeat a charge of libel. It is only necessary that the gist or substance of the challenged statements be true." *Printers II, Inc. v. Professionals Publishing, Inc.*, 784 F.2d 141, 146 (2d Cir. 1986); *see also Korkala v. W.W. Norton & Co.*, 618 F. Supp. 152, 155 (S.D.N.Y. 1985) ("Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance.") (internal quotation marks and citation omitted).

Defendants argue that the allegedly defamatory statements are "either completely true . . . or substantially true" because they "accurately report[] to the public that the FDA denied

11

entry . . . of [plaintiff's] curry because it was . . . filthy and putrid." (Defs.' Mem. of Law at 6.) Plaintiff does not dispute that the publication accurately reports the FDA's findings; rather, plaintiff argues that publication goes well beyond the scope of the FDA report, creating a false and misleading impression regarding *all* of plaintiff's products. (Pl.'s Opp'n at 11.) The court agrees. The very first sentence of the publication warns readers of the ongoing threat that plaintiff's curry powder "and other products" pose to the public health. (*See* Defs.' Mot. Ex. A.) Such an inference does not necessarily follow from the fact that: (1) the FDA seized a single shipment of filthy Special Madras Curry Powder on June 18, 2008; (2) there were "similar" seizures of plaintiff's Curry Powder in the mid-1980s; and (3) the FDA warned about undeclared tartrazine in plaintiff's custard powder on April 24, 2008. Thus, a reasonable reader could find the overall "gist" or "sting" of defendants' statements to be more serious than that which was fairly suggested by the FDA's findings. Accordingly, defendants' motion is denied in this regard.

### 4. *New York State Fair Report Privilege*

Defendants are not protected by New York's fair report privilege. The statute renders all persons immune from suit if they make "fair and true" reports of judicial, legislative, or other official proceedings. N.Y. Civil Rights Law § 74 (McKinney 2009). "A publication is deemed 'fair and true' if it is 'substantially accurate.'" *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (citing *Glendora v. Gannett Suburban Newspapers*, 201 A.D.2d 620 (2d Dep't 1994)). As discussed above, defendants' statements speak of the ongoing threat that plaintiff's curry powder "and other products" pose to the public health. (Defs.' Mot. Ex. A.) Thus, even assuming the FDA reports regarding plaintiff's products are official proceedings, a

reasonable jury could find that the publication was not a "fair and true" representation of them. *See Karedes*, 423 F.3d at 119 (explaining that section 74 does not protect statements that "suggest more serious conduct than that actually suggested in the official proceeding") (internal citations and quotation marks omitted).

In sum, plaintiff's defamation claim survives defendants' 12(b)(6) motion.

### B. Violation of the Consent Judgment and Breach of Contract (Counts I & II)

The parties' Consent Judgment prohibits defendants from "objecting, interfering, contesting, or opposing the use and/or registration by [plaintiff] of the INDI Curry Mark." (Compl. Ex. A ¶ 8.e; *see* Compl. ¶ 42.) Plaintiff alleges that defendants interfered with its use of the INDI trademark by contributing to the publication of the article/advertisement, and that the piece contained false or misleading representations regarding the quality of plaintiff's INDI products. (Compl. ¶¶ 30, 43, 52.) Defendants argue that the publication is non-actionable because it is substantially true, and that their purported conduct is protected by the First Amendment. (Defs.' Mem. of Law at 12-13; Defs.' Reply Mem. at 5-6.) The court is not persuaded by defendants' arguments. As noted above, there is an issue as to whether the article is "substantially true." Moreover, if plaintiff's allegations are true, the article contains defamatory assertions which are beyond the reach of the First Amendment. Accordingly, defendants' motion to dismiss plaintiff's breach of contract and consent-judgment-violation claims is denied.

### C. False Advertising Under the Lanham Act (Count III)

Plaintiff claims that defendants have mischaracterized the nature of its products by disseminating false statements within a "commercial advertisement or promotion" in violation of

13

15 U.S.C. § 1125(a)(1)(B).   To establish a violation of the Lanham Act, a "plaintiff must show that (1) defendants made a false or misleading representation regarding the nature, characteristics or quality of plaintiff's [goods or] services; (2) the representations were used in commerce; (3) the representations were made in the context of commercial advertising or promotion; and (4) defendants' actions made plaintiff believe it would be damaged by the representations." *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 628-29 (S.D.N.Y. 2003); *see* 15 U.S.C. § 1125. To constitute "commercial advertising or promotion," a statement must be: "(1) 'commercial speech,' (2) made 'for the purpose of influencing consumers to buy defendant's goods or services,' and (3) 'although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.'" *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56, 57-58 (2d Cir. 2002)). Commercial speech is "'speech which does no more than propose a commercial transaction.'" *Id.* (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993)).

Defendants argue, *inter alia*, that plaintiff's Lanham Act claim fails because the *Caribbean New Yorker* article is not commercial speech. (Defs.' Mem. at 9.)   The court agrees. No named defendant appears anywhere in the publication, nor do any of defendants' products, prices, or business contacts. (Defs.' Mot. Ex. A.)   As the public would have no reason to associate the publication with defendants, it cannot possibly propose a commercial transaction between defendants and readers of *The Caribbean New Yorker*.   Even if defendants paid to run the piece with a motivation toward indirectly influencing customers to buy their goods, such a motivation does not transform the piece into commercial speech. *See Bolger v. Youngs Drug*

14

*Products Corp.*, 463 U.S. 60, 66 (1983) ("The mere fact that . . . pamphlets are conceded to be advertisements clearly does not compel the conclusion that they are commercial speech . . . [and] economic motivation for mailing the pamphlets would clearly be insufficient by itself to turn the materials into commercial speech") (citations omitted).  Accordingly, the court finds that the publication is not commercial speech.

Similarly, Invor Bedessee's September 29, 2008 e-mail inviting recipients to discuss a "public article" is not commercial speech.  It is unclear what, if anything, defendant actually "discussed" with any of the e-mail recipients.  It is evident, however, that a reproduction of the *Caribbean New Yorker* piece with an invitation to "discuss" it in person is not a commercial proposition or an advertisement. *See Hutton*, 355 F.3d at 210.  Therefore, defendants' motion to dismiss plaintiff's Lanhan Act claim is granted.

### D. New York General Business Law §§ 349 and 350 (False Advertising and Deceptive Business Practices) Claims (Counts IV & VI)

Plaintiff also seeks recovery under New York General Business Law §§ 349 and 350, which declare unlawful "[d]eceptive acts or practices" and "[f]alse advertising," respectively, "in the conduct of any business, trade or commerce or in the furnishing of any service . . . ." N.Y. Gen. Bus. Law §§ 349 & 350 (McKinney 2009).  Defendants argue that these claims must be dismissed because plaintiff has failed to allege that the defendants' conduct harms consumers or causes injury to the public interest.  The court agrees.  The gravamen of plaintiff's complaint is alleged harm to its business interests; not a cognizable harm to the public interest. *See Winner Int'l v. Kryptonite Corp.*, 1996 WL 84476, at *2 (S.D.N.Y. Feb. 27, 1996) ("A party thus does not state a claim under [N.Y. Gen. Bus. Law §§ 349 or 350] absent an allegation that the defendant's conduct harms consumers or causes injury to the public interest.") (citations omitted);

*Franklin Elec. Publishers, Inc. v. Unisonic Prods. Corp.*, 763 F. Supp. 1, 5 (S.D.N.Y. 1991) (dismissing plaintiff's claim under N.Y. Gen. Bus. Law 349 because it did not allege injury to consumers or the public interest). Indeed, "[c]ourts routinely reject such attempts to fashion Section 349 and 350 claims from garden variety disputes between competitors." *Winner*, 1996 WL 84476, at *3. Accordingly, these claims are dismissed.

### E. New York General Business Law § 360-l (Injury to Business Reputation and Trademark Dilution) Claim (Count V)

New York General Business Law § 360-l protects against the unlawful use of a trademark that either (1) injures the plaintiff's business reputation ("tarnishment") or (2) dilutes the trademark such that it less effectively distinguishes plaintiff's products from others ("blurring"). *See* N.Y. Gen. Bus. Law § 360-l (McKinney 2009); *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42-43 (2d Cir. 1994) ("Traditionally, this Court has defined dilution under [New York State law] as either the blurring of a mark's product identification or the tarnishment of the affirmative associations a mark has come to convey.") (internal citations and quotation marks omitted). Tarnishment occurs when the plaintiff's trademark is devalued by its portrayal with poorer quality products or in "unsavory contexts." *Deere & Co.*, 41 F.3d at 43. "Blurring occurs 'where the defendant uses the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's services.'" *N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC*, 69 F. Supp. 2d 479, 490 (S.D.N.Y. 1999) (quoting *Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 966 (2d Cir. 1996)). Here, plaintiff alleges that defendants' misleading statements have caused both tarnishment and blurring. (Compl. ¶ 64-65.)

Defendants argue that it could not have tarnished plantiff's trademark because the INDI

16

brand is not strong enough to qualify for protection under § 360-l. (Defs.' Mem. of Law at 17-19.) The court disagrees. The plaintiff alleges that it has used the INDI mark for 30 years to sell curry powder and other spices throughout the United States and in other countries. (Compl. ¶ 10.) It also asserted that the INDI mark is distinctive and associated with high quality products. (*Id*. ¶ 11-12.) Plaintiff also claims to have invested "significantly in advertising and promoting" the INDI mark, which has generated valuable goodwill. (*Id.* ¶ 14-15.) These allegations of "strength" are sufficient to survive defendants' motion to dismiss. *See, e.g.*, *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 229-230 (S.D.N.Y. 2008) (upholding a § 360-l claim based on allegations that claimant had used its "Gen X" brand worldwide for approximately 20 years and had generated valuable goodwill for the brand).

Regarding the allegation of blurring, the INDI mark was reproduced in *The Caribbean New Yorker* publication without a link to defendants' goods or services. Such conduct may have been unlawful, but it did not lessen the capacity of the INDI mark to identify plaintiff's goods, or distinguish them from others. In fact, plaintiff admits that consumers are easily recognizing and avoiding its products because of a fear of health risks, causing a 75 percent loss in sales. (*See* Compl. ¶ 40.) In short, to the extent plaintiff's § 360-l claims include allegations of "blurring," that claim is dismissed.

### F. Common Law Product Disparagement (Count VIII)

In New York, product disparagement differs from common-law defamation because it covers false statements made about the quality of a business' goods or services, but not statements impugning the integrity of a business entity. *See Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 671 (1981). There is also a malice and special damages requirement. *Id.*;

*Drug Research Corp. v. Curtis Publ'g Co.*, 7 N.Y.2d 435, 440-41 (1960) (explaining that, in product disparagement pleadings, money damages must be itemized and that any lost customers must be named).

"The New York courts define special damages as the loss of something having economic or pecuniary value. In addition, special damages must be fully and accurately stated, with sufficient particularity to identify actual losses." *MapInfo Corp. v. Spatial Re-Engineering Consultants*, 2006 WL 2811816, at *13 (N.D.N.Y. Sept. 28, 2006) (internal quotations omitted). "Where loss of customers constitutes the alleged special damages, the individuals who ceased to be customers, or who refused to purchase, must be named and the exact damages itemized." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002).

Plaintiff attempts to evade this damage-specificity requirement by pointing out that it pled a loss in *sales*, not *customers*. (Pl.'s Opp'n at 19; Compl. ¶¶ 32, 40.) According to plaintiff, this alleged 75 percent loss in sales is attributable to pre-existing customers purchasing far less of plaintiff's products, rather than an actual loss in customers (pre-existing or otherwise). Regardless of how plaintiff wishes to categories its alleged losses, plaintiff's claim must be dismissed. "[R]ound figures, with no attempt at itemization, must be deemed to be a representation of general damages." *See Curtis Publ'g Co.*, 7 N.Y.2d at 441. Plaintiff has made no representation that the nature of its business makes it difficult to identify its purported loses with sufficient specificity. In short, plaintiff has not adequately pled special damages.

## **CONCLUSION**

Defendants' motion to dismiss is granted for counts III, IV, V (as to the blurring claim), VI, and VIII and denied for counts I, II, V (as to the tarnishment claim), and VII. This matter is hereby referred to the Magistrate Judge for further pre-trial proceedings.

SO ORDERED

DATED:   Brooklyn, New York
         March 23, 2010

                              _____/S/_____
                                    Dora L. Irizarry
                              United States District Judge